MICHAEL J. BETTINGER (STATE BAR NO. 122196)
TIMOTHY P. WALKER (STATE BAR NO. 105001)
ELAINE Y. CHOW (STATE BAR NO. 194063)
PRESTON GATES & ELLIS LLP
55 Second Street, Suite 1700
San Francisco, CA 94105
Phone: (415) 882-8200
Fax:    (415) 882-8220

Attorneys for Plaintiff
CABLE & WIRELESS
INTERNET SERVICES, INC.

**ORIGINAL FILED**

02 OCT -8 PM 3: 33

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CABLE & WIRELESS INTERNET SERVICES, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AKAMAI TECHNOLOGIES, INC., a Delaware corporation; and SOCKEYE NETWORKS, INC., a Delaware corporation,<br><br>Defendants. | Case No. C 02-3708 CRB<br><br>**DECLARATION OF ANDREW SWART IN SUPPORT OF PLAINTIFF'S MOTION TO ENJOIN DEFENDANT AKAMAI TECHNOLOGIES FROM FURTHER INFRINGEMENT OF U.S. PATENT NO. 6,275,470**<br><br>Date:<br>Time:   10 a.m.<br>Judge:  Hon. Charles R. Breyer<br>Dept.:  8 |

I, ANDREW SWART, declare as follows:

1.      I am a resident of Santa Barbara, California. I am currently employed by Cable & Wireless Internet Services, Inc. ("Cable & Wireless") as a Vice President. I submit this declaration based upon personal knowledge and, if called as a witness, would testify as follows.

-1-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

Printed on Recycled Paper

## QUALIFICATIONS

2. I graduated from the University of Texas in 1984 with a B.S. in Management Information Systems. I went to work for a company called Interactive Systems from 1984 to 1992, in both product management and software development. I worked mainly on low-level operating system software, e.g., adding TCP/IP support to the UNIX operating system for a major computer manufacturer (these were fundamental protocols for the Internet, which were not natively available in most operating systems at that time). I eventually became a Project Director, managing several teams of senior developers on multiple software development projects. From 1992 to 1994, I was Director of OEM Services for SHL Systemhouse, where I was responsible for all operating system development projects for OEM clients -- computer manufacturers, such as Sun Microsystems.

3. In 1994 I co-founded a company called Sandpiper to develop software that would help operate the Internet. In the early years, I managed Internet and operating system software development for OEM clients, which included the development of Internet gateway and security products, as well as a fault-tolerant computer system. In 1996 we developed an entirely new solution to an increasingly troubling problem with the way content was routed through the Internet, inventing what is now known as the Content Delivery Network (CDN). We were awarded U.S. Patent No. 6,185,598 covering this work, and Sandpiper went on to become the first commercial operator of a CDN service. Sandpiper merged with Digital Island in 1999, and I became Vice-President of Engineering, with responsibility for all product development. When Digital Island was acquired by Cable & Wireless in 2001, I retained the title of Vice President of Engineering. I have remained deeply involved in the development of that CDN service, now operated by Cable & Wireless.

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

-2-

Printed on Recycled Paper

REVIEW AND UNDERSTANDING OF THE '470 PATENT

4. I have reviewed the patent at issue in this case, U.S. Patent No. 6,275,470 B1, "On-Demand Overlay Routing for Computer-Based Communication Networks" ("the '470 Patent") which was filed with the U.S. Patent and Trademark Office on June 18, 1999 as Application No. 09/336,487.

5. I have also reviewed a copy of the file history of the patent, provided to me by the Cable & Wireless attorneys. While I am not a patent lawyer, I believe I understand the description of the invention and I am familiar with the technical terms used in the claims.

6. Based upon my educational and professional experiences described above, I am familiar with the knowledge and understanding of one of ordinary skill in the field of routing systems for computer-based networks, as of June 1999.

7. I have been asked by the Cable & Wireless attorneys to review the interpretations of certain terms in the '470 Patent, and to confirm that the interpretations offered below reflect how those terms would have been understood by one of ordinary skill in June, 1999 in the context of the '470 Patent. I believe that the interpretations set forth below are reasonable statements of how one of ordinary skill as of June, 1999 would understand these terms consistent with their usage in the patent and in light of the prosecution history.

    7.1. The phrase "optimized path" means a route for a telecommunications signal to follow from a source (transmitter) to a destination (receiver), which route is deemed preferable to other routes with respect to selected cost/performance criteria and with respect to at least one identified alternative path.

    7.2. The phrase "transmitting a message" means sending electrical signals which comprise information or data toward a destination.

    7.3. The term "source" means a point in the network from which a message is transmitted.

    7.4. The term "destination" means a point in the network at which a message is received.

-3-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

Printed on Recycled Paper

7.5 The phrase "packet-switched" means, with respect to a communications network, sending data in packets to a destination. A "packet" is a bundle of data, usually in binary form, organized in a specific way for transmission. The Internet is a packet-switched computer-based communications network.

7.6. The phrase "measuring a cost" means ascertaining the value of one or more resources required to transmit a message from a source to a destination.

7.7. The phrase "along a default path" means along a path that, absent this invention, would be used to transmit a message by the routing mechanism(s) employed by the networks that make up the communication system.

7.8. The phrase "routing mechanisms" means a system or process employed by a network to select a path to transmit a message.

7.9. The phrase "measuring an alternative cost" means ascertaining the value of one or more resources required to transmit a message from a source to a destination over a specified path other than the default path.

7.10. The phrase "along at least one alternative path" means along one or more paths other than the default path.

7.11. The phrase "intermediate nodes not on the default path" means points of connection to the network other than the source and the destination that are not on the default path, as defined above. The intermediate nodes are nodes on an overlay network.

7.12. The phrase "wherein the intermediate nodes define a virtual topology on top of a computer-based communications network" means that at least one of the intermediate nodes which make up the alternative path is part of an overlay network on top of an existing computer-based communications network.

7.13. The phrase "overlay network" means an interconnected set of two or more special nodes which by themselves form a network but which are also part of an existing, larger network.

-4-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

Printed on Recycled Paper

## MATERIALS REVIEWED AND UNDERSTANDING OF EDGESUITE

8. I have been asked by the Cable & Wireless attorneys to review certain documents that I have been provided and to determine whether the EdgeSuite service offered currently by Akamai Technologies, Inc. contains each of the elements of Claim 1 of the '470 Patent. The publicly available documents that I have been provided, and have reviewed, include: (a) an Akamai White Paper entitled, "Turbo-Charging Dynamic Web Sites with Akamai EdgeSuite"; (b) a March 22, 2002 interview of Akamai chief scientist Tom Leighton, appearing at www.infoworld.com /articles/hn/xml/02/03/22/020322hnakamai.xml; (c) an article entitled "EdgeSuite – Content and Application Delivery by Akamai Technologies" appearing on the KnowledgeStorm website at www.knowledgestorm.com/ActivityServlet?ksAction=displaySolutionPrintVersion; (d) an Akamai document entitled, "A Distributed Infrastructure for e-Business – Real Benefits, Measurable Returns"; (e) an Akamai White Paper entitled "Internet Bottlenecks: the Case for Edge Delivery Services"; (f) a document entitled "Global Traffic Management" appearing on the Akamai Technologies, Inc. website at www.akamai.com/en/html/services/global_traffic_management.html; (g) an Akamai press release dated April 18, 2002 which describes Akamai's 2002 first quarter results appearing at http://www.akamai.com/en/html/about/press/press343.html; (h) selected pages from Newton's Telecom Dictionary (Fifteenth Edition) published in 1999; (i) a selected page from Newton's Telecom Dictionary (Sixteenth Edition) published in 2000; and (k) two documents relating to an October, 2001 M.I.T. conference on "Resilient Overlay Networks", one of which is an overview with a definition of a Resilient Overlay Network and the other of which is a series of slides for a presentation at that conference. My understanding is that these documents are being made of record before this Court as attachments to the Declaration of Anup Tikku, and I will refer to them here by the Exhibit numbers at which they appear with that declaration.

9. When I discuss "EdgeSuite" herein, I am referring to what I understand to be the current service, which includes functionality attributed to what Akamai referred to as "SureRoute" in an April, 2002 press release. Tikku Decl., Exh. M, p. 2.

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

-5-

Printed on Recycled Paper

## CONCLUSIONS REGARDING EDGESUITE

10. Based upon my general understanding of the way in which Akamai edge servers operate and my review of the documents referred to above, which describe the EdgeSuite service with the SureRoute feature in more detail, and based on my understanding of the '470 Patent, it is my opinion that the current EdgeSuite service does what is described in Claim 1 of that patent.

11. Below, I explain this conclusion by first summarizing my understanding, based on the publicly available documents identified above, of the operation of EdgeSuite in the context of Akamai's network of edge servers. I then compare the claim to EdgeSuite to demonstrate that each of the elements of the claim is found in EdgeSuite. I am somewhat limited at this point in my knowledge of the details of the EdgeSuite service, because I do not have access to the source code for the applicable software, nor have I had the opportunity to review internal Akamai documentation and schematics explaining the details of how the service operates. However, based on my review of Akamai's public statements and marketing materials, on my general understanding of EdgeSuite's functionality, and my own experience as to how a product with the functionality claimed by EdgeSuite ought to work, I have formed opinions as to the way in which EdgeSuite <u>should</u> work if it functions in the manner that Akamai claims.

## UNDERSTANDING OF EDGESUITE

12. To understand the EdgeSuite service, one must first understand the Akamai edge servers. The diagram below, taken from an Akamai white paper (Tikku Decl., Exh. C, p. 6), explains the basics of the Akamai edge server technology[1].

---

[1] This illustration is simply one example of a user transaction, and is not intended as a complete description of Akamai's edge server technology.

-6-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

Printed on Recycled Paper



- A user requests a web page (content) [I use the term "content" to refer to data or information that might be used by an end-user in the context of the Internet], but instead of being sent to the Web site (origin server), the request is transparently directed to an Akamai edge server, preferably one that is close to the user.
- If the requested content already exists on the edge server, it is served back to the user. If not, the edge server requests the origin server to send the missing content to the edge server.
- The origin server sends the content to the Akamai edge server, where it might be stored to service future user requests, and from there it is served to the user.

13.  This "edge server" technology works well with static content that can be stored (or cached) in the Akamai edge servers. The process becomes more complex, however, when the information is dynamic (i.e. the information changes between requests or is otherwise customized to a particular user) and is therefore uncacheable. That is where certain capabilities of EdgeSuite enter the picture. According to Akamai, the EdgeSuite service is the "next-generation content delivery service, leveraging its core technology and industry-leading content delivery network for the distribution of an entire Web site – including static, dynamic, embedded objects, and HTML." Tikku Decl., Exh. C, p. 3.

14.  For example, EdgeSuite maintains persistent links between the Akamai edge servers and the origin servers to ensure that dynamic content is delivered quickly. According to Akamai:

> Even serving truly uncacheable content through Akamai is generally faster and more reliable than having end users go directly from their browser to the origin

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

-7-

Printed on Recycled Paper

> Web servers. The origin site maintains persistent connections to a finite number of Akamai edge servers, rather than trying to do this with millions of individual browsers. ... Performance improvements result from keeping the connection open between the edge and the origin server with data flowing through it.

*Id.* at p. 7. This feature reduces the connection overhead associated with the dynamic content requests made by the edge server to the origin server.

15.     However, the EdgeSuite capability that ensures a reliable path between the Akamai edge server and the origin server by use of "an overlay network on top of the Internet" is what plainly overlaps Claim 1 of the '470 Patent. According to Tom Leighton, a founder and the chief scientist for Akamai:

> Today our flagship service is called EdgeSuite, and that includes the assembly of dynamic and personalized HTML at the edge. Instead of being done at the source side, we're putting together the HTML at the edge, in our edge servers, which are close to the end-user. We basically take over the entire site by doing this and it affords a lot of advantages. First, you get the enhanced speed and reliability because everything is coming from an Akamai server near the client. Second, it gives a little bit of a shield to the source side because the source side is no longer necessarily accessible [by] the public at large. It's only accessed by Akamai servers and they can be authenticated. This dramatically decreases the infrastructure at the source side. **As part of that, we've built an overlay network on top of the Internet. It provides the capability that when the Internet has a problem, we'll tunnel through one of our other servers to get around the problem.** This enables reliable point-to-point communication on the Internet, which never existed before.

*Id.* at Exh. D, p. 1 (emphasis supplied). Similarly, Akamai explains that when information is uncacheable in the edge server, "the request is tunneled back to the origin server" via the overlay network. *Id.*, Exh. C, p. 14.

16.     "Tunneling" is a key concept in understanding EdgeSuite and its relation to the claim. Newton's Telecom Dictionary defines "tunneling" as "to temporarily change the destination of a packet in order to traverse one or more routers that are incapable of routing to the real destination." *Id.*, Exh. J, p. 821. "Tunnel" is defined as

> an intermediary program which is acting as a blind relay between to [sic] connections. Once active, a tunnel is not considered a party to the HTTP communication, though the tunnel may have been initiated by an HTTP request. The tunnel ceases to exist when both ends of the connections are closed."

-8-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

Printed on Recycled Paper

*Id.*, Exh. N, p. 925. "Tunneling" between servers on an interconnected network of Akamai servers to avoid a problem between an edge server and an origin server is exactly the kind of optimized routing method using an overlay network that I believe is covered by the patent.

17. This overlay network, comprised of some or all of the Akamai edge servers, gathers or accesses information about conditions on the Internet. Akamai explains that "to collect Internet data, Global Traffic Management uses probes throughout Akamai's highly distributed, fault-tolerant network. Data analysis and map assembly/refreshing are also carried out on the Akamai network." *Id.* at Exh. E, p. 2. Akamai explains that its software measures a wide range of network communication costs.

> Akamai's network performance monitoring software tracks several network health statistics including network link latency, packet loss rates at routers, available link capacity, network hop distance, AS path information, and download times. These metrics are aggregated into communication costs and in turn serve as input to mapping algorithms that create dynamic maps based on large-scale global optimization.

*Id.* Exh. F at p. 26.

18. In April, 2002, Akamai reported the addition of "new functionality" to EdgeSuite, including

> Akamai SureRoute$^{SM}$ - advanced technology that determines the optimal route between the customer's origin servers and the edge of the Internet to optimize delivery for all types of content, including dynamic, uncacheable content;

Tikku Decl., Exh. M, p. 2.

19. To summarize, Akamai itself claims that it uses its overlay network to optimize the routing between its edge servers and the origin servers, which would improve, among other things, the performance of serving dynamic, uncacheable content.

COMPARISON OF EDGESUITE TO THE CLAIMS

20. The preamble of the '470 patent requires "a method for determining an optimized path for transmitting a message from a source to a destination within a packet-switched computer-based communications network." EdgeSuite is plainly used to operate over the Internet, which is a packet-switched computer-based communications network.

-9-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

Printed on Recycled Paper

21. The steps of the claim are most easily observed where Akamai's edge servers have to communicate with origin servers to retrieve content. An example is an end-user request for dynamic content from a Web site (origin server). The user is first directed (transparently) to make the request to an Akamai edge server. This request is received by the Akamai edge server, which then sends its own request(s) for the dynamic content to the origin server.

22. Concentrating on an edge server's request to the origin server, a message (saying, in effect, "Please provide the following (dynamic) content...") is then transmitted from a source (the Akamai edge server) to a destination ( the origin server). Akamai uses EdgeSuite's routing components to determine the optimal path for transmitting this message from the Akamai edge server (source) to the origin server (destination) by following the steps of the claim, as discussed below. See, e.g., Tikku Decl., Exh. F, p. 10: "Communication between the "edge servers" and "content generation servers" [origin server] occurs via the most optimal paths through the Internet— using intelligent content routing algorithms supported by real-time network information.

23. Element (a) of Claim 1 requires "in response to a request to transmit the message, measuring a cost from the source to the destination along a default path, the default path being derived by means of one or more existing routing mechanisms of the communications network." The arrival of the message seeking the dynamic content operates as a request that the Akamai edge server transmit a message to the origin server to obtain the dynamic content[2].

24. In response to that request (to send a message to the origin server to obtain uncacheable content), EdgeSuite determines the optimal path to the origin server. It does this by ascertaining the cost of the default path and the costs of alternative paths. Tikku Decl., Exh. F, p. 10, quoted in paragraph 22 above. The measurement required by the patent may take the form of a new probe or "ping" to ascertain conditions on the default path, or it may constitute checking a table that is independently "refreshed" on a frequent basis for information on the current condition of the normal or default route from the Akamai edge server to the origin server, or another method

---

[2] I would observe that this technology will come into use whenever a request is made of the edge server for content that is not already stored on the edge server, and therefore has to be obtained from the content origin site.

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

-10-

Printed on Recycled Paper

altogether could be used – or a combination of methods could be used. Akamai tracks the resources that the patent identifies as cost metrics:

> Akamai's network performance monitoring software tracks several network health statistics including network link latency, packet loss rates at routers, available link capacity, network hop distance, AS path information, and download times. These metrics are aggregated into communication costs and in turn serve as input to mapping algorithms that create dynamic maps based on large-scale global optimization.

*Id.*, Exh. F, p. 26. Claim 1 doesn't require any particular measurement method, so long as measurement is occurring.

25. Element (b) of Claim 1 requires "measuring an alternative cost of transmitting the message from the source to the destination along at least one alternative path, the alternative path passing through one or more intermediate nodes not on the default path, wherein the intermediate nodes define a virtual topology on top of a computer-based communications network."

26. EdgeSuite measures a cost of transmitting the message along one or more alternative data paths. Akamai asserts that it follows the design principle that

> Communication between the "edge servers" and "content generation servers" [origin servers] occurs via the most optimal paths through the Internet - using intelligent content routing algorithms supported by real-time network information.

*Id.*, Exh. F at p. 10. In my opinion, this statement could not be true without a comparison between the costs of using the default path and one or more alternative paths.

27. The alternative path passes through one or more intermediate nodes not on the default path. Akamai's own edge servers, through which Akamai's Tom Leighton says Akamai "tunnels" to avoid problems on the Internet, serve this function Thus where the default path isn't optimal, Akamai routes the message from an edge server to the origin site using intermediate nodes from Akamai's own network (of 12,700 servers) to create a better path to the origin server.

28. The Akamai edge servers that are on the alternate path are intermediate nodes that define a virtual overlay network - a virtual topology within the meaning of the patent. Indeed, as quoted above, Akamai's chief scientist refers to Akamai's many edge servers as such: "As part of that [EdgeSuite], we've built an overlay network on top of the Internet" *Id.*, Exh. D, p. 1. Thus

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

-11-

Printed on Recycled Paper

Akamai has admitted that its edge servers constitute an overlay network, the nodes of which are available for use in constructing alternate paths between edge servers and the content origin server.

29.  I would also note that Akamai's edge server network - as described by Akamai - and the invention described in the patent are remarkably close to the definition of the "Resilient Overlay Network" that was the subject of the October 2001 M.I.T. conference:

> A RON [Resilient Overlay Network] is an application-layer overlay on top of the existing Internet routing substrate. The RON nodes monitor the functioning and quality of the Internet paths among themselves, and use this information to decide whether to route packets directly over the Internet or by way of other RON nodes, optimizing application-specific routing metrics.

Tikku Decl., Exh. K, p. 2.

30.  Element (c) of Claim 1 requires "determining the optimized path by comparing the default cost and the alternative cost." EdgeSuite compares the cost of the default path and the alternative path, and determines the optimized path based upon selected metrics. If Akamai truly practices its self-proclaimed design principle that

> Communication between the "edge servers" and "content generation servers" [origin servers] occurs via the most optimal paths through the Internet - using intelligent content routing algorithms supported by real-time network information.

(*Id.*, Exh. F, p. 10), and if its statements lauding its routing capabilities are true, then the costs of the alternate paths using other Akamai edge servers must be compared to the cost of the default path to determine the optimal path to the origin server. I also note that the same optimization also applies to the return route from the origin server to the Akamai edge server.

///

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM
FURTHER INFRINGEMENT OF U.S. PAT. NO. 6,275,470

-12-

Printed on Recycled Paper

1 | 31.  For the above reasons I believe that Akamai's EdgeSuite service performs each of the steps described in Claim 1 of the '470 Patent. Naturally I reserve the right to expand or amend the statements made in this declaration as I learn of additional information to which I do not have access at this time.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 3RD day of October, 2002 at Santa Barbara, California.

*Andrew D. Swart*

Andrew D. Swart

K:\47022\00002\MJB\MJB_P21HN

-13-

DECLARATION OF ANDREW SWART IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN AKAMAI FROM